UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KYLE AVERY WITEK, | Case No. 17-13647 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| BARBARA A. ANDERSON & KAREN C. DELBEKE, | U.S. MAGISTRATE JUDGE ANTHONY P. PATTI |
| Defendants. | |

/

**ORDER ADOPTING THE REPORT AND RECOMMENDATION [26]; OVERRULING PLAINTIFF'S OBJECTIONS [28]; AND GRANTING DEFENDANT DELBEKE'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES [13]**

*Pro se* Plaintiff Kyle Avery Witek, an inmate in the custody of the Michigan Department of Corrections ("MDOC") at the St. Louis Correctional Facility ("SLF"), has brought claims pursuant to 42 U.S.C. § 1983 against MDOC officials and medical professionals employed by a private contractor. Mr. Witek suffers from Crohn's disease, a gastrointestinal disorder marked by inflammation in the bowels. To treat this condition, and to avoid damaging "flare-ups" of symptoms, Mr. Witek has asked the Michigan Department of Corrections to provide him with a low-residue diet. This action arises from MDOC's alleged failure to provide Mr. Witek his required diet and treatment.

On December 20, 2017, the Court referred pretrial matters in this case to Magistrate Judge Patti [Dkt. 7]. On April 4, 2018, Defendant Delbeke brought a Motion

to Dismiss [13]. Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Patti issued a Report and Recommendation on October 31, 2018. For the reasons discussed below, the Court **ADOPTS** the R&R [26]. Plaintiff's Objections [168] are **OVERRULED**, and Defendant's Motion to Dismiss [13] is **GRANTED**.

**FACTUAL BACKGROUND**

The factual background, for the purposes of this order, is set forth as follows:

> "Plaintiff claims he was diagnosed with Crohn's Disease in September 2014 and was remanded to the MDOC's custody in June 2015. (DE 1 at 13-14.) On June 9, 2015, while at Duane Waters Hospital (DWH) in Jackson, Michigan, Plaintiff received a 3-month order (until September 9, 2015) for a low residue diet with 3 low residue snacks. (DE 1 at 40.) On July 13, 2015, while he was incarcerated at the Charles Egeler Reception & Guidance Center (RGC), Plaintiff completed a grievance, which noted, inter alia, that he had yet to receive either his special diet or snack bag. (DE 13-1 at 24-29 [RGC-2015-07-0815-12H].) The following day, July 14, 2015, he received a 3-month medical detail for an evening snack (until October 14, 2015). (DE 1 at 42.)
> 
> On September 3, 2015, while at Cooper Street Correctional Facility (JCS), Plaintiff received a 4-month order (until January 4, 2016) for a low residual diet. (DE 1 at 42.) Plaintiff claims to have seen Dietician Anderson in December 2015, who allegedly wanted to place Plaintiff on the regular line and "refused to renew [his] detail for 3 . . . low residue snack bags a day[.]" (Id. at 19-20, 38.) Still, Plaintiff seemingly alleges that his therapeutic diet detail was kept in place upon his December 2015 transfer from JCS to West Shoreline Correctional Facility (MTF), as well as upon his transfers from MTF to Pugsley Correctional Facility (MPF) and from MPF to ARF. (Id. at 20, 43.)
> 
> Plaintiff had a medical detail for a low residue diet from March 16, 2016 to September 16, 2016. (Id. at 44.) Plaintiff claims this was renewed while he was at G. Robert Cotton Correctional Facility (JCF). (Id. at 43.) In fact, the documents generated on December 29, 2016 at Lakeland Correctional Facility (LCF) in Coldwater, Michigan and on January 31, 2017 at SLF show that Plaintiff had a 6-month medical detail for a low residue diet (September 1, 2016 to March 1, 2017). (Id. at 46, 48.)

According to Plaintiff, renewal of his therapeutic diet detail became a problem at SLF, seemingly because his care "once again fell to [Dietician] Anderson[.]" (Id. at 20, 38.) He also claims to have had "troubles being provided meals that were in accordance with . . . [his] therapeutic diet requirements." (Id. at 14, 38.) On February 12, 2017, Plaintiff completed a grievance against Food Service Staff Trinity Group. (Id. at 65-72 [SLF-17-02-0150-09dt], DE 17 at 68.)

Plaintiff accuses Defendant Anderson of having "forged state medical documents" in his medical file and directs the Court's attention to the period of February 2017 and March 2017. (DE 1 at 20-21, 37-38.) It seems that the Registered Dietician reviewed Plaintiff's chart on February 14 and/or 17, 2017. (Id. at 61, DE 13-1 at 13.) On February 21, 2017, while at SLF, Plaintiff completed a health care request regarding the then-forthcoming March 1, 2017 expiration of his diet detail. (DE 1 at 15, 54.) Plaintiff contends that, on February 22, 2017, Anderson extended his diet detail for 30 days (until March 23, 2017), pending review of his chart. (Id. at 21, 38, 89.) He further contends that the chart review was actually conducted on February 23, 2017. (Id. at 21.) It seems that a nurse's visit was scheduled on or about February 23, 2017 to discuss the dietician's response to the chart review. (Id. at 55.) According to Plaintiff, the events giving rise to his claims "began essentially on February 23, 2017," at which point he was notified "of the denial to renew [hi]s therap[eu]tic diet by medical staff, and the registered dietician." (Id. at 13.) On that date, Plaintiff completed three grievances. (See id. at 15-16, 73-77 [SLF-17-02-0200-12I], 81-85 [SLF-17-02- 0201-28A], 86-89 [SLF-17-02-0207-28A]; see also DE 13-1 at 9-23.) According to Plaintiff, these grievances were "distinctly different." (DE 17 at 22-23.)

On March 6, 2017, while at SLF, Plaintiff completed another health care request, this time complaining about "complications . . . since there has been a change in care[,]" describing "constant pains, and bloody stool, with coffee grains." (DE 1 at 57.) It seems a nurse's visit was scheduled on or about March 8, 2017. (Id. at 58.) On March 9, 2017, Karen C. Delbeke, N.P. ordered a low residue diet until April 6, 2017, apparently for the period that Plaintiff would be on Prednisone; Delbeke's comments also indicate that the dietician "reviewed [Plaintiff's] store list, and felt as though some of [his] items [he] purchased were not consistent with [his] need for low residue diet." (Id. at 38, 50, 61.)3 On March 10, 2017, Plaintiff completed an MDOC Health Care Request to determine whether Delbeke had submitted a referral to the Dietician regarding Plaintiff's diet. (Id. at 60.) Approximately one week later, Plaintiff completed a grievance against Food Service Trinity Staff in which he contended that they "continue to fail to provide grievant according to [his] prescribed special diet." (DE 13-1 at 4-8 [SLF-17-03-0280-28A].)

> On Tuesday, April 4, 2017, while still at SLF, Plaintiff completed an MDOC Health Care Request, noting that he "began vomiting over the weekend." (DE 1 at 63.) The following day's response commented: "You were not scheduled to see the NP[.] [T]he nurse contacted the on-call provider and no new orders were given. You have been scheduled with nursing. Watch your callout." (Id. at 64.) Plaintiff seems to assert – by way of describing a missing record – that a physician's assistant renewed this detail on April 6, 2017, effective until Plaintiff's April 19, 2017 appointment with Delbeke. (Id. at 51.)
>
> On April 11, 2017, Plaintiff completed an application to proceed in district court without prepaying fees or costs. (Id. at 96-98.) Plaintiff was contemplating a lawsuit, but, after he met with Defendant Delbeke and she renewed his therapeutic diet detail (presumably her April 19, 2017 order for a 6-month low residue diet (until October 19, 2017)), Plaintiff "felt the situation had been resolved." (Id. at 16-17, 52, 38; see also DE 17 at 23.)
>
> Plaintiff claims to have kited healthcare on October 4, 2017, regarding his then-forthcoming therapeutic diet detail expiration. (DE 1 at 17.) According to Plaintiff, Delbeke "refused to renew [his] detail for a therapeutic diet." (Id.)4 Plaintiff provides MDOC disbursement authorizations dated October 17, 2017 as evidence of "notifying all 5 Defendants of [his] intention to file [a] complaint pursuant to 42 U.S.C. § 1983[.]" (DE 1 at 90-95.)
>
> According to Plaintiff, he was "taken off [his] therapeutic diet on October 18 or 19, 2017. (Id. at 21.) Early in the morning of October 25, 2017, he experienced "worsening complications with [his] condition . . . ." (Id.) He requested to see medical. (Id. at 18.) He was not seen until the early morning hours of October 26, 2017. (Id. at 19.) That same day, Defendant Delbeke allegedly informed Plaintiff that "she was not going to re-order [hi]s therapeutic diet and go against [dietician Anderson's] refusal to renew [his] therapeutic diet." (Id.) Plaintiff claims that, on October 26, 2017, he weighed 147 pounds, whereas, "on a proper diet[,] [he] can [usually] maintain a [weight] of 155 [pounds]." (Id. at 22.)

(R&R 7-12) (footnotes omitted).

## ANALYSIS

The question is whether or not Mr. Witek properly exhausted his administrative remedies pursuant to the requirements of the Prison Litigation Reform Act. See 42 U.S.C. § 1997(e). Though failure to exhaust such remedies is not a jurisdictional bar to

filing suit, when raised as an affirmative defense it is grounds for dismissal. *Jones v. Bock*, 549 U.S. 199, 212 (2007). There are no federal requirements for exhaustion; for a prisoner to exhaust his remedies, he must follow the grievance procedures put forward by the correctional institution. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). MDOC uses a three-step grievance procedure that calls for prisoners to "briefly but concisely" provide the "who, what, when, where, why, how" details of the issue they are grieving. *Id.* (citing Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007)).

The Magistrate Judge found that Mr. Witek did not exhaust his administrative remedies against Ms. Delbeke. His February and March grievances could not have done so because the occurrences giving rise to Mr. Witek's claims against Ms. Delbeke did not arise until October of 2017, when Ms. Delbeke informed Mr. Witek that she was not going to reorder his therapeutic diet. (Compl. at 19). Mr. Witek filed a grievance on October 16, 2017 (SLF 17-10-1024-1l), but he did not wait for his Step II response before filing this suit on November 6, 2017. (R&R at 17).

Mr. Witek's first and second objection argue that the Magistrate Judge erred by focusing on this specific date and time, and not the larger context of Ms. Delbeke's decisions during the course of his treatment. Mr. Witek argued that he did grieve Ms. Delbeke on this issue in February and March of 2017. The Magistrate Judge looked to two portions of Mr. Witek's Complaint and found that his cause of action against Ms. Delbeke derived from his discontinuance of his therapeutic diet, not a larger trend of

neglect. Mr. Witek claimed that the events giving rise to his claim began "essentially on February 23, 2017, and continue to the present time," when his therapeutic diet was first denied by "medical staff and the registered dietician." (Compl. 13).

The R&R emphasizes that though the dispute may have begun immediately after Mr. Witek's transfer to St. Louis Correctional Facility, it was largely resolved after Mr. Witek filed his first batch of grievances. Indeed, Mr. Witek notes that when Ms. Delbeke in April of 2017 told him that his diet was being renewed for the maximum permitted period of 6-months, he "felt the situation had been resolved." (Compl. at 17; Dkt. 17 at 23).

Moreover, his earlier administrative grievances are aimed not at Ms. Delbeke but rather at the Dietician, Ms. Anderson, and Trinity Food Services.

- In SLF 17-02-0150-09dt, filed on February 22, 2017, Mr. Witek alleged that Trinity Food Service, the prison's food service provider, was neglecting to abide by the requirements of his low-residue diet.
- In SLF 17-02-0200-12I, filed February 23, 2017, Mr. Witek alleges that a response to a kite sent to medical reminding them to renew his diet was returned "insinuating that the dietician intended to not renew my diet." (Dkt. 13-1 pg. 12).
- In SLF 17-02-0207-28A, also filed on February 23, 2017, Mr. Witek focuses specifically on Ms. Anderson and alleges that she is responsible for depriving him of his low-residue diet. (Dkt. 13-1 pg. 17).

- In SLF 17-02-0201-28A, filed on March 12, 2017, Mr. Witek again grieved only Ms. Anderson, mentioning Ms. Delbeke only as a source of corroboration. "Pursuant to a visit with the NP on 3-9-17[,] Karen Delbeke stated her agreement of prior treatment methods containing special diet accommodation for patients with Crohn's disease, and informed patient/prisoner she was submitting her referral to the [d]ietician." (Dkt. 13-1 pg. 20).
- In SLF 17-03-0280-28A, filed on March 13, 2017, Mr. Witek complained that Trinity Food Service was inadequately complying with the requirements of his medical diet. (Dkt. 13-1 pg. 7).

From the content of these grievances, taken individually or as a whole, the MDOC was clearly not on notice that Mr. Witek intended to sue Ms. Delbeke. Stepping back and looking at the larger picture, as Mr. Witek requests in his objections, does not provide any more evidence that Mr. Witek properly grieved his complaints against Ms. Delbeke.

Mr. Witek's case against Ms. Delbeke will be dismissed for failing to satisfy the exhaustion requirement of the PLRA. The Court therefore will not reach Mr. Witek's third objection to the R&R, which was directed towards the R&R's alternate grounds for dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the Report and Recommendation [26] is hereby **ADOPTED** and, except as otherwise noted, entered as the findings and conclusions of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [28] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Karen Delbeke's Motion to Dismiss for Failure to Exhaust Administrative Remedies [13] is **GRANTED**.

**SO ORDERED**.

                                                  s/Arthur J. Tarnow
Dated: January 9, 2019                  Arthur J. Tarnow
                                                  Senior United States District Judge