UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE AVERY WITEK,

           Plaintiff

v.

HEIDI E. WASHINGTON,
ERIC BALCARCEL,
BARBARA A. ANDERSON,
M. ZAMORA, and
KAREN C. DELBEKE,

           Defendants.

_____/

Case No. 2:17-cv-13647
District Judge Arthur J. Tarnow
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT ANDERSON'S MOTION FOR SUMMARY JUDGMENT (DE 33)

I.    **RECOMMENDATION**:  The Court should **GRANT** Defendant

Anderson's February 19, 2019 motion for summary judgment.  (DE 33.)

II.    **REPORT**

    A.    **Plaintiff initiated this lawsuit against five Defendants.**

Plaintiff Kyle Avery Witek is currently incarcerated at the Michigan

Department of Corrections (MDOC) Macomb Correctional Facility (MRF) in

Lenox Township, Michigan, and apparently suffers from Crohn's Disease.[1]  On

November 6, 2017, while incarcerated at the St. Louis Correctional Facility (SLF),

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited June 21, 2019.

1

Plaintiff filed this lawsuit *in pro per* against five defendants.  His combination form / handwritten complaint includes, among other things, a statement of claim (DE 1 at 7-26), a description of injuries and a prayer for relief (DE 1 at 27-30), details on exhaustion (DE 1 at 31-33), as well as some "additional information," (DE 1 at 37-38).

Plaintiff is proceeding *in forma pauperis*.  (DEs 2, 3.)  On December 15, 2017, Judge Tarnow entered an opinion and order of partial summary dismissal and directing service upon the remaining defendants.  (DE 5.)  Accordingly, Washington, Balcarcel, and Zamora were terminated as Defendants.

Defendants Anderson, a Registered Dietician, and Delbeke, a Nurse Practitioner, have since appeared and are represented by counsel.  (DE 1 at 4-5, 11, 50; DEs 9, 10, 16, 25; *see also* DE 33-3 at 2.)

## B.   Defendant Anderson is the only remaining, active Defendant.

Although Plaintiff filed another complaint on February 16, 2018, it was stricken from the record a month later.  (DEs 8, 11.)  More recently, on January 9, 2019, the Court granted Defendant Delbeke's motion to dismiss for failure to exhaust administrative remedies.  (DEs 13, 30.)  Accordingly, Delbeke was terminated as a Defendant, and only Defendant Anderson remains.

Judge Tarnow has referred this case to me for all pretrial proceedings. Currently before the Court is Defendant Anderson's February 19, 2019 motion for summary judgment.  (DE 33.)  Plaintiff's verified response is timely under the Prisoner Mailbox Rule.  (DE 34, DE 35.)  *Houston v. Lack*, 487 U.S. 266, 270 (1988).  Defendant has filed a timely reply.  (DEs 34, 36.)

### C.   Fed. R. Civ. P. 56(a)

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citation omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact . . . [,]" then the court may "consider the fact undisputed for the purposes of the motion[.]").  "Once the moving party satisfies its burden, 'the burden shifts to the

3

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.]" *Stansberry*, 651 F.3d at 486 (referencing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)).

The fact that Plaintiff is *pro se* does not lessen his or her obligations under Rule 56.  Rather, "[t]he liberal treatment of *pro se* pleadings does not require

4

lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (internal citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (emphasis added); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### D.    Discussion

#### 1.    Plaintiff's SLF confinement diet

Plaintiff declares that the therapeutic diet prescribed to him, presumably at the time he was diagnosed with Crohn's in September 2014, consisted of "high protein, soft, bland food . . . ."  (DE 1 at 14, DE 35 at 11 ¶ 13.)  He claims he was remanded to the MDOC's custody in June 2015.  (DE 1 at 14.)  The MDOC currently defines a therapeutic diet as "[a] modified diet plan prescribed by the MP or dentist for a prisoner whose nutritional needs cannot be adequately met from the MDOC Statewide Standard Menu."  MDOC PD 04.07.101, effective Sept. 1, 2018,

5

¶ D.  According to Plaintiff, the MDOC claimed it did not specifically provide the prescribed diet and, in its place, "provided a low residue diet[.]"  (DE 35 at 11 ¶ 14.)  Whatever differences may exist between the diet as allegedly prescribed and the therapeutic diet provided by the MDOC, they do not appear to be the basis of Plaintiff's claims.[2]

### a.    January 31, 2017 – February 22, 2017

Plaintiff alleges that he was transferred to SLF on January 31, 2017.  (DE 1 at 14, 48.)  Renewal of his therapeutic diet detail became a problem at SLF, allegedly because his care "once again fell to [Dietician] Anderson[.]"  (*Id*. at 20, 38.)  He also claims to have had "troubles being provided meals that were in accordance with . . . [his] therapeutic diet requirements."  (*Id*. at 14, 38.)

The salient events began on February 1, 2017, when Delbeke prescribed Loperamide, an antidiarrheal.  (DE 33-12 at 2.)[3]  It seems that Defendant Anderson reviewed Plaintiff's chart on February 14, 2017 and/or February 17, 2017.  (*Id*. at 61, DE 33-3 at 2; *see also* DE 33-16 at 5.)

––––––––––––––––––––––––––

[2] Although Plaintiff's complaint mentions alleged incidents that pre-date his incarceration at SLF, his complaint makes clear that "[t]he events giving rise to the present claim began at [SLF] . . . ."  (DE 1 at 13.)  Thus, I will forego the review of Plaintiff's pre-SLF confinement diet, which, in any case, was discussed in my prior report and recommendation.  (DE 26 at 7-8.)

[3] *See Stedman's Medical Dictionary* 47970 (Nov. 2014).

On February 21, 2017, Plaintiff completed a health care request regarding the then-forthcoming expiration of his diet detail. (DE 1 at 15, 54.) Nurse Adams's same-day response indicates that a nurse's visit was to be scheduled on or about February 23, 2017 to discuss the dietician's response to the chart review. (DE 1 at 55.)

Plaintiff contends that, on February 22, 2017, a registered dietician – presumably Defendant Anderson – extended his diet detail to March 23, 2017, pending review of his chart. (*Id*. at 21, 38, 89.) The order appears to have been placed by Natalie Souder, R.N. (DE 33-9 at 2.)

### b.      February 23, 2017 – March 2017

Plaintiff asserts that the events giving rise to his claims "began essentially on February 23, 2017," at which point he was notified "of the denial to renew [hi]s therap[eu]tic diet by medical staff, and the registered dietician[,]" also presumably Defendant Anderson. (*Id*. at 13.) It does appear that a Registered Dietician reviewed Plaintiff's chart on February 23, 2017. (DE 33-7 at 2.) [4]

On March 6, 2017, Plaintiff completed another health care request, this time complaining about "complications . . . since there has been a change in care[,]"

---

[4] Additionally, Plaintiff claims to have completed three "distinctly different" grievances, among which was one naming Defendant Anderson. (DE 1 at 15-16, 22-23, 73-77 [SLF-17-02-0200-12i], 81-85 [SLF-17-02-0201-28A], 86-89 [SLF-17-02-0207-28A].)

describing "constant pains, and bloody stool, with coffee grains[,]" and Stephanie M. Adams, R.N. responded that Plaintiff would be scheduled with nursing.  (DE 1 at 57-58.)

On March 9, 2017, Nurse Practitioner Delbeke ordered a low residue diet until April 6, 2017, apparently for the period that Plaintiff would be on Prednisone, which may be prescribed for "certain conditions that affect the … intestines[,]" which would include Crohn Disease.[5]  Delbeke's comments also indicate that the dietician "reviewed [Plaintiff's] store list, and felt as though some of your items you purchased were not consistent with your need for low residue diet."  (*Id.* at 61; DE 33-9 at 3.)  Delbeke's notes from a same-day provider visit explain that "low residue diets are meant for exacerbation."  (DE 33-7, DE 33-11 at 2-4.)  She also prescribed Sulfasalazine and Prednisone.  (DE 33-12 at 3.)[6]

### c.  April 2017

---

[5] *See* https://medlineplus.gov/druginfo/meds/a601102.html (last visited June 21, 2019); *Stedman's Medical Dictionary* 293730 (Nov. 2014).

[6] Within one week, Plaintiff completed MDOC Health Care Requests.  First, on March 10, 2017, Plaintiff sought to determine whether Delbeke had submitted a referral to the dietician regarding Plaintiff's diet.  (*Id*. at 60.)  Second, on March 16, 2017, Plaintiff asserted that he received food that was not in accordance with his diet plan.  (DE 1 at 79.)  The following day's response directed Plaintiff "to contact custody/ ARUS regarding the food you are receiving.  Healthcare has provided food service with a copy of your diet detail."  (DE 1 at 80.)

On Tuesday, April 4, 2017, Plaintiff completed an MDOC Health Care Request, noting that he "began vomiting over the weekend." (DE 1 at 63.) T. Austin, R.N.'s April 5, 2017 response commented: "You were not scheduled to see the NP[.] [T]he nurse contacted the on-call provider and no new orders were given. You have been scheduled with nursing. Watch your callout." (*Id*. at 64.) On April 6, 2017, Joshua A. Buskirk, P.A. renewed the low residue diet detail, effective until April 20, 2017. (DE 33-9 at 4, DE 33-16 at 16; *see also* DE 1 at 51.)

On April 11, 2017, Plaintiff completed an application to proceed in district court without prepaying fees or costs. (*Id*. at 96-98.) Plaintiff was contemplating a lawsuit, but, after he met with Delbeke (presumably the April 19, 2017 provider visit) and she renewed his therapeutic diet detail (presumably her April 19, 2017 order for a 6-month low residue diet (until October 19, 2017)), Plaintiff "felt the situation had been resolved." (*Id*. at 16-17, 52, 38; *see also* DE 17 at 23, DE 33-9 at 5, DE 33-11 at 5-7, DE 33-16 at 10-12, 17.) Delbeke also prescribed Cipro, an antibiotic, and Ultram, an analgesic. *Stedman's Medical Dictionary* 931660 (Nov. 2014), https://medlineplus.gov/druginfo/meds/a688016.html (last visited June 21, 2019). (DE 33-12 at 4.)

Plaintiff saw Delbeke again on April 28, 2017, when he presented with ulcerative colitis exacerbation. (DE 33-1 at 8-10, DE 33-16 at 13-15.) She prescribed Prednisone, to begin on May 1, 2017. (DE 33-12 at 5.) When Plaintiff

saw Delbeke on July 14, 2017, he presented with ulcerative colitis, and she renewed his prescriptions for Loperamide and Zantac, which are, respectively, an antidiarrheal and an antisecretory.  *Stedman's Medical Dictionary* 50870 (Nov. 2014), https://medlineplus.gov/druginfo/meds/a682280.html (last visited June 21, 2019).  (DE 33-11 at 11-13, DE 33-12 at 6.)

### d.    October 2017 – December 2017

Plaintiff claims to have kited healthcare on October 4, 2017 regarding his then-forthcoming therapeutic diet detail expiration.  (DE 1 at 17.)  According to Plaintiff, Delbeke "refused to renew [his] detail for a therapeutic diet."  (*Id*.)[7] Plaintiff provides MDOC disbursement authorizations dated October 17, 2017 as evidence of "notifying all 5 Defendants of [his] intention to file [a] complaint pursuant to 42 U.S.C. § 1983[.]"  (DE 1 at 90-95.)[8]

---

[7] In his complaint, Plaintiff claims that, in October 2017, a large portion of his legal property was seized but that certain material was never returned to him, including items "relevant in this matter[.]"  (DE 1 at 37; *see also* DE 13-1 at 1 [SLF-17-10-1024-1I or SLF-17-10-1025-1I].)  While Plaintiff then wrote that he was "missing an exponential amount of exhibit evidence for this complaint action[,]" (DE 1 at 37), the Court suspects that the extensive medical records attached to Defendant Anderson's motion have completed Plaintiff's medical treatment picture, and Plaintiff's response, albeit verified, does not seem to assert that facts "are unavailable to" him.  Fed. R. Civ. P. 56(d).

[8] When questioned about the period from January 2017 to October 19, 2017, Plaintiff testified that "there [were] intermittent days where [he] wasn't receiving [his] low residue diet[,] because there w[ere] catchups in the paperwork or one detail would expire and they would have to wait for a new detail."  (DE 33-10.)

### i. The first lapse of Plaintiff's low residue diet (October 19, 2017 – October 25, 2017)

It seems that Plaintiff was without a low residue diet from October 19, 2017 through October 25, 2017, *i.e.*, <u>approximately 7 days</u>.  (DE 33-9 at 5-6.)  Plaintiff contends that he was "taken off [his] therapeutic diet" on October 18 or 19, 2017.  (*Id.* at 21.)  Early in the morning of October 25, 2017, he experienced "worsening complications with [his] condition . . . ."  (*Id.*)  Seemingly late that evening, he requested medical attention.  (*Id.* at 18.)

Plaintiff claims that he was not seen until the early morning hours of October 26, 2017.  (*Id.* at 19.)  On that date, Delbeke allegedly informed Plaintiff that "she was not going to re-order [hi]s therapeutic diet and go against [dietician Anderson's] refusal to renew [his] therapeutic diet."  (*Id.*)  Plaintiff claims that, on October 26, 2017, he weighed 147 pounds, whereas, "on a proper diet[,] [he] can [usually] maintain a [weight] of 155 [pounds]."  (*Id.* at 22.)  In fact, Delbeke's October 26, 2017 notes, which document his visit for abdominal pain and Crohn's exacerbation, list Plaintiff's weight as 151 pounds and include a notation that a low residue diet was "only being ordered for 5 days until he comes back for [follow up]."  (DE 33-8, DE 33-11 at 14-16.)  Accordingly, Delbeke ordered Plaintiff a

---

This report assumes Plaintiff's claims are limited to those instances when the record illustrates a gap in Plaintiff's low residue diet detail.  (*See* DE 33-9.)

11

low residue diet from October 26, 2017 to October 31, 2017.  (DE 33-9 at 6.)  In

addition, Delbeke prescribed Prednisone and Ultram.  (DE 33-12 at 7.)

> ### ii.   The second lapse of Plaintiff's low residue diet (10/31/17 – 12/4/17)

It seems that Plaintiff was without a low-residue diet medical detail from

October 31, 2017 to December 4, 2017, *i.e.*, <u>approximately 35 days</u>.  (DE 33-9 at

6-7.)  On November 30, 2017, Delbeke ordered a low-residue diet beginning on

December 5, 2017 and stopping on January 5, 2018.  (DE 33-9 at 7; *see also* DE

33-11 at 17-19, DE 33-12 at 8, DE 33-13.)[9]

> ### 2.   Plaintiff's claims against Defendant Anderson seem limited to allegedly forging medical documents and refusing to renew a low residue diet.

Meanwhile, on November 6, 2017, Plaintiff filed the instant lawsuit.  His

complaint is based on alleged violation(s) of his rights under the Eighth

Amendment to the United States Constitution.  (*Id.* at 6, 8.)  In his "statement of

claim," Plaintiff contends that Defendant Anderson "is [a party] to this violation

because she has completely ignored referrals for a therapeutic diet made by

complainants['] medical providers, knowing that the alternative is severe pain and

suffering, and irreparable long term damages of serious life threatening injury."

---

[9] Delbeke also ordered low-residue diets in December 2017, February 2018, and April 2018.  (DE 33-9 at 8-10.)  However, these dates occurred after November 6, 2017 filing of the instant lawsuit.  The Undersigned finds it unnecessary to include discussion of treatment since the filing of the complaint.  (*See also* DE 33-2, 33-4, 33-11 at 20-27, DE 33-12 at 9-11, DE 33-14, DE 33-15, DE 33-16 at 18-20**.)**

(DE 1 at 9.)  Similarly, in what appears to be the conclusion of the "facts

underlying" Plaintiff's claims, he contends that Defendant Anderson . . .

> . . . is as well treating me with the same deliberate indifference to my
> medical condition by refusing to provide a therapeutic diet for me as
> prescribed by numerous medical providers.  [B]y ignoring referrals
> from medical providers[,] she is operating outside of her authority
> according to Michigan Department of Corrections Policy Directive.

(DE 1 at 23.)

More specifically, Plaintiff's claims against Defendant Anderson appear to

be of two kinds:  **(a)** an alleged February 2017 "dereliction of duty" concerning his

therapeutic diet, seemingly associated with Plaintiff's accusation that Defendant

Anderson "forged state medical documents[;]" and, **(b)** Defendant Anderson's

refusal(s) to renew Plaintiff's therapeutic diet detail.  (DE 1 at 15, 20-21, 37-38;

*see also* DE 1 at 86-89 [SLF-17-02-0207-28A].).[10]

### 3.   The alleged falsification does not support a conclusion that Defendant Anderson violated the Eighth Amendment.

As noted above, the medical records suggest that Defendant Anderson

reviewed Plaintiff's chart on February 14, 2017 and/or February 17, 2017, and

perhaps even on February 23, 2017.  (DE 33-3 at 2, DE 1 at 61, DE 33-7 at 2.)  On

---

[10] Plaintiff alleges that the medical staff and the dietician have been trying to take
away his therapeutic diet since his arrival at SLF and his initial grievance,
presumably SLF-17-02-0150-09dt against food service staff Trinity Group.  (*See*
DE 1 at 65-72, 38; DE 17 at 68.)  However, the Court does not construe this
complaint as based on First Amendment retaliation, given Plaintiff's assertions that
his complaint is based on the Eighth Amendment.  (DE 1 at 6, 8.)

February 22, 2017, Nurse Souder issued Plaintiff a one-month medical detail order for a low residue diet. (DE 33-9 at 2).

Seemingly referring to Anderson's February 14, 2017 nutritional assessment, Plaintiff contends that the "chart review was not conducted until [February 23, 2017]." (DE 33-3 at 2, DE 1 at 21.)  Also, he declares that Anderson "forged state documents to conceal her culpability[,]" and "sought through deception to justify her unconstitutional behaviors[.]"  (DE 35 at 9 ¶¶ 4, 6.)

Defendant Anderson does not address this claim.  (DE 33, DE 36.) Nonetheless, the records show that Plaintiff had a medical detail for a low residue diet from September 1, 2016 to March 1, 2017, *i.e.*, *for the entire month of February 2017*.  (DE 1 at 48, DE 33-16 at 9.)  Even if Plaintiff is suggesting that this order was disturbed at or after his January 31, 2017 transfer to SLF (DE 1 at 14), it does not appear to have been revoked, given Plaintiff's February 21, 2017 attempt to address the then-forthcoming March 1, 2017 expiration of his diet detail (DE 1 at 54-55), which appears to have resulted in the February 22, 2017 order for a low residue diet until March 22, 2017 (DE 33-9 at 2).  Thus, even if the chart review was not performed until February 23, 2017, there does not appear to be any constitutional consequence connected with that alleged action.

> **4.    The evidence does not support a conclusion that, on those occasions when Plaintiff was without a low residue diet, Defendant Anderson was deliberately indifferent in violation of the Eighth Amendment.**

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs...." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). "A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components." *Phillips*, 534 F.3d at 539; *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). As the Supreme Court has instructed in *Farmer v. Brennan*, 511 U.S. 825 (1994):

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. *First*, the deprivation alleged must be, objectively, "sufficiently serious," ...; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," .... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. ...
>
> The *second* requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." ... To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." ... In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, ... a standard the parties agree governs the claim in this case.

*Farmer*, 511 U.S. at 834 (emphases added, internal footnote and internal citations omitted). The Court then went on to set forth the test for deliberate indifference:

15

> ... a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of confinement
> unless the official knows of and *disregards* an excessive risk to
> inmate health or safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference.... But an official's
> failure to alleviate a significant risk that he *should have perceived but
> did not*, while no cause for commendation, cannot under our cases be
> condemned as the infliction of punishment.

*Id.* at 837–838 (emphasis added).  "[S]ubjective recklessness as used in . . .

criminal law is a familiar and workable standard that is consistent with the Cruel

and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the

test for 'deliberate indifference' under the Eighth Amendment."  *Id.* at 839–840.

### a.    Sufficiently serious deprivation

Anderson admits that Plaintiff's Crohn's disease is "a serious medical

condition."  (DE 33 at 17.)  *See also Hendricks v. DesMarais*, No. 2:11-CV-40,

2013 WL 5408258, at *5 (S.D. Ohio Sept. 25, 2013) ("Although there is a genuine

dispute of fact as to whether Plaintiff suffers from Crohn's or Ulcerative Colitis,

the dispute is not of a *material* fact because either way, he has a serious medical

need.").  Still, she argues that Plaintiff "has failed to demonstrate the objective

component of his Eighth Amendment claim."  (DE 33 at 16.)  Plaintiff disagrees.

(DE 35 at 20.)

Specifically, Anderson argues that Plaintiff "cannot establish that his

provided treatment was inadequate."  (DE 33 at 17.)  True, "when an inmate has

16

received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (internal quotations omitted).  However, Defendant Anderson's argument that Plaintiff's "injuries . . . were not due to the inadequacies of his diet[,]" (DE 33 at 19), is really one that goes to causation and damages, rather than to the "sufficiently serious" nature of the alleged deprivation.  *Farmer*, 511 U.S. at 834.

### b.      Sufficiently culpable state of mind

Generally referring to provider visits and medication orders, Anderson contends that, "while at SLF, [Plaintiff's] Crohn's disease was monitored and treated by MDOC medical professionals."  (DE 33 at 17, DE 33-11, DE 33-12.)[11] Then, citing Plaintiff's MDOC Medical Detail Orders, Anderson notes that, during his incarceration at SLF, Plaintiff was without a therapeutic diet on only three occasions:  **(i)** October 19, 2017 to October 25, 2017; **(ii)** October 31, 2017 – December 4, 2017; and, **(iii)** February 13, 2018 – February 14, 2018.  (DE 33 at 18, 20; DE 33-9.)  Still, Defendant contends, Plaintiff suffered flare-ups and

---

[11] Defendant Anderson also refers to a November 30, 2017 MDOC consultation (DE 33-13), December 5, 2017 and December 12, 2017 chart updates (DE 33-14), and February 6, 2018 SOAP notes (DE 33-15).  (DE 33 at 17.)  However, these post-date the November 6, 2017 filing of this lawsuit.

exacerbations "while on a low-residue diet[,]" such as during 2015 and 2016, during April 2017, and on February 6, 2018.  (DE 13 at 18-19, 22; DE 33-16 at 2-15, 18.)  Therefore, Defendant Anderson contends that any injuries Plaintiff suffered "were not due to the inadequacies of his diet."  (DE 33 at 19.)  This, too, is a causation issue, which cannot be summarily decided on this record.

More importantly, Defendant contends that, on those occasions where she "refused to renew Plaintiff's therapeutic diet," it was for nutritional reasons.  (DE 33 at 21.)  Defendant defends the break from a low residue diet by referring to, *inter alia*, nutritional assessments and notes from a provider visit which pre-date the lapses at issue in this case (*see*, *e.g.*, DE 33-5, DE 33-17, DE 33-3, DE 33-7), as well as Delbeke's October 26, 2017 notes that a "[r]ecent RD eval does not recommend [low residue diet] as it can lead to nutritional deficiencies[,]" (DE 33-8).  (DE 33 at 21-22; *see also* DE 36 at 7.)

### c.    Analysis

Plaintiff's claims against Defendant Anderson are based upon Eighth Amendment deliberate indifference.  (DE 1 at 6, 8.)  However, "[n]either negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim." *Rhinehart v. Scutt*, 509 F. App'x 510, 513 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Sanderfer v. Nichols,* 62 F.3d 151, 154–55 (6th

Cir.1995)).  "Because 'deliberate indifference' requires more than negligence or

carelessness, . . . an allegation of questionable medical judgment states, at most, a

claim for a medical malpractice, as opposed to a constitutional violation."  *Owens*

*v. O'Dea*, 149 F.3d 1184 (6th Cir. 1998) (internal reference omitted).  *See also*

*Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) ("A doctor's errors in medical

judgment or other negligent behavior do not suffice to establish deliberate

indifference.").

Plaintiff's claims against Defendant Anderson are of the negligence or

medical malpractice ilk.  In response to the pending motion, Plaintiff declares that

Defendant Anderson "at no time honored the refer[r]als and recommendations of

medical providers[,]" (DE 35 at 9 ¶ 5), and directed medical care contrary to the

course of treatment prescribed by non-MDOC health professionals (DE 35 at 9-10

¶¶ 8, 10, 12).  Plaintiff claims that deviations "would eventually result in the need

of advanced surgical procedures[,]" (DE 35 at 10-11 ¶ 12), and he notes that his

particular diagnosis – a fistula and 11 centimeters of stricture scar tissue in the

terminal ileum, or ileocecal valve – was "unlike" most Crohn's patients and made

him more susceptible to problems if he consumed regular portion and fiber content

meals.  (DE 35 at 19.)  Plaintiff further argues that Defendant Anderson

"repeatedly ignored and refused to comply with the request and recommendations

of Plaintiff's medical provider[,]" and "denied and refused to provide treatment for

19

Plaintiff[,]" notwithstanding her access to "detailed medical files, CAT scan results, clinician notes[.]"  (DE 35 at 19-21.)

However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Even if Defendant Anderson's approach was different than the approaches of two other MDOC dieticians, or three gastroenterologists, or three surgeons (DE 35 at 20), it "really amount[s] to a disagreement over the adequacy of [Anderson]'s actions and judgments, sounding in professional negligence." *Koetje v. Norton*, No. 2:13-CV-12739, 2015 WL 5692513, at *7 (E.D. Mich. Aug. 13, 2015) (Patti, M.J.), *report and recommendation adopted*, No. 13-12739, 2015 WL 5679836 (E.D. Mich. Sept. 28, 2015) (Hood, J.).  "[A] difference of opinion does not establish deliberate indifference to serious medical needs[.]" *Lerma v. Bell*, 2 F. App'x 782, 784 (9th Cir. 2001).  The decision over whether to order a low fiber, low residue diet is a "medical judgment" that "the Court is not permitted to second-guess . . . ." *Brooks v. Cty. of Macomb*, No. 13-cv-15082, 2015 WL 4430190, at *8 (E.D. Mich. July 20, 2015) (Levy, J., adopting report and recommendation of Stafford, M.J.) ("Dr. Clark prescribed . . . Azulfidine, Pentasa and Prednisone, and a low fiber, low residue diet in order to treat her Crohn's disease[.]").

20

Moreover, Plaintiff contends that Defendant Anderson did not issue a single medical detail for a low residue diet. (DE 35 at 17.) However, even though the low residue diet medical details were *ordered* by Nurse Souder, Nurse Practitioner Delbeke, or Physician Assistant Buskirk (DE 33-9), it is possible they were *prompted* by direction from Defendant Anderson. For example, both Delbeke's and Anderson's names appear on the February 14, 2017 nutritional assessment. (DE 33-3 at 2.) More to the point, the Court has no reason to believe that Defendant Anderson *disturbed* these orders.

Likewise, to the extent Plaintiff contends that Anderson deprived him of a therapeutic diet (DE 35 at 17-18), it seems that Plaintiff was only without a low residue diet from October 19, 2017 to October 25, 2017 and from October 31, 2017 to December 4, 2017, *i.e.*, a total of <u>approximately 42 days</u>. If Plaintiff went "days without food[,] waiting for a medical provider to renew a therap[eu]tic diet that should have been done by [Defendant Anderson][,]" (DE 35 at 21), Delbeke's October 26, 2017 notes belie a conclusion that Defendant Anderson was deliberately indifferent and, instead, suggest that the low residue diet was *not recommended* "as it can lead to nutritional deficiencies." (DE 33-8 at 2.)

### d. Conclusion

Given Plaintiff's recurring low residue diet details, albeit with some gaps, and the myriad medical documents referenced above, "it cannot be said that

21

Plaintiff was not treated for his Crohn's Disease."  (DE 33 at 22-23.)  Here, the

Court agrees that, "while Plaintiff claims that Defendant was deliberately

indifferent to his medical care, she was, at most, negligent."  (DE 33 at 23.)  In

sum, the evidence does not support a conclusion that, on those occasions during

October 2017 through December 2017 when Plaintiff was without a low residue

diet, Defendant Anderson was deliberately indifferent in violation of the Eighth

Amendment.  Plaintiff wants the Court to find that Anderson's "modus operandi"

as a dietician was "wrong[.]"  (DE 35 at 21.)  She may well have been wrong, and

possibly negligent, but being "wrong" does not equate with deliberate indifference.

It can hardly be characterized as a "denial of 'the minimal civilized measure of

life's necessities,'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981), much less as "so woefully inadequate as to amount to no

treatment at all[,]" *Westlake*, 537 F.2d at 860 n.5.

### 5.    Qualified Immunity

Defendant Anderson argues that she "is entitled to qualified immunity[,] as

she did not violate Plaintiff's *clearly established* constitutional rights."  (DE 33 at

24-25 (emphasis added).)  Plaintiff argues that qualified immunity does not apply.

(DE 35 at 22-23.)

Defendant Anderson's qualified immunity argument is hedged as an

alternative argument.  Therefore, if the Court agrees with the foregoing

recommendation on the merits of Plaintiff's Eighth Amendment claim, then it need not devote further attention to this additional argument.[12]

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and

---

[12] Even without further analysis, and recognizing that Plaintiff also pleads an individual capacity claim against Anderson, Plaintiff's official capacity claim against Anderson, to the extent it seeks monetary relief, is clearly precluded by 11th Amendment immunity. (*See* DE 1 at 30, DE 35 at 23.) *See, e.g., Meyers v. Franklin Cty. Court of Common Pleas*, 81 F. App'x 49, 55 (6th Cir. 2003) ("Under § 1983 and the Eleventh Amendment, the Juvenile Court is considered an arm of the state and cannot be subject to a § 1983 or any other suit for monetary relief.").

23

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 22, 2019                       s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2019, electronically and/or by U.S. Mail.

                                           s/Michael Williams
                                           Case Manager for the
                                           Honorable Anthony P. Patti